Your honors, may it please the court. I'm Robert G. Ryan for petitioner David M. David. I'd like to reserve two minutes for rebuttal. We note that because the IJ did not make a credibility finding, Mr. David's credibility is presumed. Mr. David is a single, 33-year-old native and citizen of Indonesia. He is ethnic Chinese and Catholic. And under Seel V. Ashcroft, the record shows he's also a member of the significantly disfavored group of Indonesia's ethnic Chinese minority. We also submit that under In an area in which I have little expertise and probably the tail that wags this dog, how is it that you came to the conclusion that there was error as a consequence of denial of your motion to reconsider? They simply did not consider our arguments under disfavored group analysis, number one. Number two, they didn't. How do you know that? Well, they said it didn't apply. They said that the Ninth Circuit essentially hasn't extended it, that the standard, I believe in this case they said it was. Do you think the court has the right decision on a motion to reconsider or just say I reconsidered it and I deny it? What had happened, Your Honor, I believe in this case, was that they hadn't considered the sale decision that had come down, which was a more, which was even better than, excuse me, they hadn't considered legal long decision in the previous decision of June 1st, 2000. And that would have changed the outcome in your humble opinion? Well, it would have because, or at least we believe it would have because the sale court also recognized religion. And so one would then have a disfavored subgroup, which would mean there would be an even lower level of individualized risk that would have to be. Oh, thank you. I don't understand that. I do have the date, sir. Deny my brother and sister the opportunity to get more substance. It's a salient point, Judge Behrer. The INA's decision initially on dismissing the appeal was June 1st, 2005. That's at page 28 of the record. They dismissed the, they denied the motion to reconsider on August 25th. Let me ask you this. Do you need disfavored group analysis in this particular case? Yes. We believe it should be applied in this case. And the reason for it is this, Judge Pius. The regulations for asylum and withholding are parallel, parallel on past persecution. They're parallel on pattern or practice evidence. The only difference is the burden of proof. Cardoso, the Cardoso-Vonseca case recognized the difference in the burden of proof. Everyone recognizes that. But that doesn't mean that we're proposing, suggesting to the court, that the burden of proof for withholding a removal has to change. It's still 50 percent plus a federal. There's a sentence in SAIL, I think, that says something like, because of the disfavored group, because he's a member of the disfavored group, he doesn't have to show very much individualized. And I suppose in a withholding case you wouldn't say that, right, because you'd still have to show, I mean, it would depend how strong the disfavored group evidence was, but it could be you'd still have to show a lot. That's correct. You'd still have to show more than 50 percent. We're simply saying that. So far as you read SAIL, and sometimes the board seems to, as sort of coming top down and saying, well, you don't have to, you can provide just a little evidence, that wouldn't apply in the withholding. But on a bottom-up basis it was, i.e., it would be a bump up. Yes, it would be, as is a bump up in asylum cases. The question is, what's the increment that's left? The increment that's left is obviously more in a withholding case. Certainly. No question about it. We're not changing the burden of proof here at all. The government says that we are. We're not. We're not proposing that in any way, shape, or form. This is an evidentiary tool that IJs and BIAs can apply. They've applied it since 1994. Nobody's had a problem applying it. Nobody. It's applied in the circuit. The circuit handles maybe 35, 40 percent of all the immigration cases in the country. Fifty. Fifty. We stand corrected, Judge Brisson. Fifty. I was trying to be conservative. So there's just no problem applying it. The government really doesn't come up with any compelling argument whatsoever in its briefs in any of these cases. They say you can't do it because you can't do it. The BIA says so. Let's go back to the question that you were asked first. All right. Let's assume that. Why does your client win at that point if he didn't win without it? As to the particulars of his case, he testified that he suffered discrimination as a child because of his ethnicity. He was beaten up on some occasions after not acceding to demands for money. On one occasion, he was asked for money in this fashion, Chinese, got any money on you? That's at record at page 96. When he was 12, he won a card game over a native Indonesian boy. This ultimately resulted in the beating by the boy's brothers. He was bitten on the stomach, causing him to bleed from the wound. That's at record at 97 and 98. He testified to two incidents when he was 16 or 17 years old. The first incident, he was driving a motorcycle with his girlfriend. He was approached by some males on motorcycles that identified him as a Chinese, approached him, requested money. He didn't have it. They started searching him. They didn't find the money. It was hidden in his shoe. Two of the males started touching his girlfriend in an inappropriate manner, to say the least. He testified that one of the males told him to shut up, slapped him on the back of the head. All four males started beating him around the face and the head. The four males then left. He went to the police. They demanded a bribe, which he wouldn't pay. Two weeks later, he was attacked again by two males while shopping at a mall. They'd asked him for his stuff. This is at record 102, 103. He testified the two males slapped him and punched him in the face and the eye. The assailants called him a, quote, Chinese bastard, end of quote. He did not report this incident to the police because he thought it would be useless and that the police would ask for money again. When was all this? That happened, he says, when he was 16 or 17 years old. When would that have been? So it was 1974, so we can really make that distinction. It would probably be 90. Yes, he's 33 years old now, so about 92 or so. He testified that he attended church regularly. He was charged a dollar for parking his motorcycle while attending services. Instead, 25 cents was charged to the Native Indonesians. He testified the money was extorted from him. He also testified regarding pattern or practice evidence that his father was tragically killed by a car driven by a Native Indonesian. He filed a police report but had no idea whether the matter was ever investigated. The driver came to his house, offered him $60 in U.S. currency, in rupiah, but that's the equivalent, but the petitioner refused to accept the money. Then, of course, he testified regarding what happened to his mother, who was granted asylum, and she was raped by a Native Indonesian during a business trip at a hotel. That's recorded at page 78. Are you contending that the record demonstrated past persecution or not? Yes, there's past persecution in this case, absolutely. We're saying that because under Singh v. INS. If you had that, would the disfavored group make a difference? Yes. At that point, you'd have a shifted burden anyway. Yes, it would because that triggers the presumption of, in this case, clear probability of persecution, more likely than not, but we'd still need to have disfavored group analysis, yes, indeed. It would still apply because the regulations for asylum and withholding parallel each other on past persecution. It doesn't mean the case is over. But all the asylum cases in which the idea has been applied are ones in which there wasn't past persecution. That's correct. There wasn't past persecution in Salem, for instance. I don't understand conceptually how it would fit in if there were. Well, past persecution triggers a rebuttable presumption that if, and the government has the burden by preponderance of the evidence to show that the country conditions are safe enough for the applicant to return. As a practical matter, the case would probably be over if the judge had found past persecution. However, we would still want to have it in this case. It's not mutually exclusive. You could still have disfavored group analysis and have past persecution. So what are you asking us to do? We're asking the court to extend disfavored group analysis to INA withholding and CAC. Can we remand this case to the agency and say now you have to apply it? Yes. We'd like for the court to publish a decision on that particular point and then remand the case so that the board may decide the matter again. Let's hear from the government. Then you have 27 seconds for rebuttals. So which case are you not arguing? The next one? I'm sorry, Your Honor? Which case are you not arguing? The next one? The next case, Your Honor. I see. May it please the Court. My name is Kristen Maracy, appearing on behalf of the Respondent, the U.S. Attorney General. In this case, Your Honor, the record does not compel the conclusion that the Petitioner established eligibility for withholding of removal in Convention Against Torture Protection where the agency reasonably determined that the isolated and remote incidents of harassment or discrimination that the Petitioner suffered did not make him more likely than not to suffer persecution or torture if he returned to Indonesia. Additionally, the board acted well within its discretion, its broad discretion in denying the Petitioner's motion to reconsider his case since the Petitioner merely argued in his motion that he'd marshaled enough evidence in support of his claims, but didn't show an error of factor law that the board made in its previous decision. The first issue, the record doesn't compel the finding that the Petitioner more likely than not would suffer persecution if he returned to Indonesia. The Petitioner failed to show that he had an individualized risk of persecution or that he'd shown this, such that he more likely than not would be persecuted. As this Court tells you to do. The second issue or the test in this circuit is that you have to actually have a subjective proof that the persecution that went on went on as a consequence of his religion. I'm sorry, Your Honor. Could you repeat the question? In other words, what happened here in the series that you heard your adversary recite to us of all the problems that surround the Petitioner, you're saying they're not enough, and I'm asking you why. Well, Your Honor, the incidents that the Petitioner has referred to regard incidents that happened as long ago as 21 years ago and 17 years ago. All right. So the issue, that's one issue. Time from happening. What else? Certainly, Your Honor. Additionally, these were isolated incidences. He didn't show any follow-up by people who were individually targeting him any more than any others in his group would be targeted. That's sort of what I asked you. You require you believe you require a subjective proof that these were aimed at him? Your Honor, it would go to whether or not he has an individualized risk of persecution if he returned. Well, that's true. But this is why we now end up with the problem of the disfavored group. I mean, if you don't consider the fact in why doesn't the agency at least have to consider the fact in determining how likely it is that he's going to be persecuted in the future that he is a member of a group that as to which many people are persecuted. That certainly makes it more likely that he's going to be persecuted in the future. It doesn't make it entirely likely. But if you're asking him to bear all of the burden based on his individualized determination, I don't know what the basis for that is. Your Honor, certainly all of the evidence in the record should be considered. The different country reports, all of the reports that are in the record. The evidence that that was done in this case? Your Honor, the board and the immigration judge said they considered, said that they considered all of the evidence. Actually, they don't. I mean, the immigration judge says essentially that Respondent's own history of harassment and abuse do not clearly rise to the level of egregiousness. And he's not taking into account anything else. Your Honor, on page 78 of the record, the immigration judge noted that the court has considered the entire record carefully. All evidence and testimony have been considered. It doesn't demonstrate anything, because if he – obviously, if you look at a record and you think certain things are not pertinent, then you don't place them. It doesn't tell you anything about what weight he gave, if any, to the history of persecution of Chinese Christians in Indonesia. There's absolutely no indication he gave any, is there? Your Honor, in this case, it would be the immigration judge's responsibility to go point through point through each document that was submitted into the record. But he said his own history of harassment and beatings, even as accepted as true, do not rise to the level of egregiousness required. So that seems to indicate that's all he was taking into account. Your Honor, we would argue that that portion of the immigration judge's decision simply showed that the immigration judge, in considering the record, the incidents that happened to this Petitioner did not rise to persecution and did not make it more likely than not that he would face persecution if he returned to Indonesia, the facts in this record. Well, does that have to do with the timetable, what you started out telling me was this application? Certainly, Your Honor. I think the remoteness in time certainly goes to that issue, as does the number of incidences which were isolated in nature and also not severe in nature. We would argue that most of these incidents... Rape of his mother, that's not a severe one? Your Honor, that certainly is an unfortunate situation. I agree it's unfortunate. That's not really why we're here. But the Petitioner failed to show that that incident related to his fear of persecution would have an impact. Well, let's study him. My understanding is that the finding was that he didn't show that it had to do with her ethnicity either. Yes, Your Honor. There's no evidence in the record that it was on account of her religion or ethnicity. What does the agency, the BIA says in this case twice, and I haven't seen the location elsewhere, that the reason why the disfavored group theory doesn't apply to withholding is because in withholding you have to meet the higher and less elastic clear probability standard. What does less elastic mean? They said it twice. They said it in this, on reconsideration and in the motion, the merits decision. What does less elastic mean? Your Honor, I think that by that they simply mean that whereas you need to show a 10 That's not what they mean, because they said higher and less elastic. Higher accounts for the higher amount, so then less elastic must mean something else. I'm just curious as to what it might mean. Your Honor, in this case, the less elastic burdens certainly have meant in that whereas the disfavored group analysis, which creates a more elastic burden in that you can consider things to differing degrees where a Petitioner has to show a less individualized burden, making that more elastic. Here that's not been extended to withholding of removal claims. So the burden of proof would be a less elastic standard. You know, in that same paragraph that Judge Brezan was just noting in the board's merits decision, I don't understand how the board reads our decision in sale, that we created a lesser burden in sale. Yes, Your Honor. In the court's decision in sale, I believe the board was interpreting that to mean that where a Petitioner does show Interpret it to mean that. I don't know. If you read sale, sale doesn't, you know, we didn't lower the burden of proof. Your Honor, the board seems to be noting that under the disfavored group analysis, once a Petitioner shows his membership in that disfavored group, his burden of showing an individualized risk is lowered. He still has the same ultimate burden of 51 percent or whatever it is. Well, for asylum cases, the applicant would still have the burden of showing at least a well-founded proof. If you're trying to decide probability, is it likely that this person is going to get persecuted in the future, right? And you have somebody who is a member of the group as to which, you know, one hundredth or one-tenth of the people have been persecuted in the last 20 years. That certainly increases his risk of getting persecuted in the future over somebody who is not a member of such a group, right? I mean, what, on what basis could you say it doesn't? Certainly, Your Honor, you could say that that could increase their burden. However, all of that information would be considered under the current. Well, it might be. But in the two cases we've looked at so far, it looks like it wasn't. It looks like they were putting 100 percent of the burden on the person to show his risk factor based on the fact that people like him are being persecuted a lot in this area. They just didn't seem to give that any weight at all in getting to the requisite burden. Your Honor, we would argue that in this case the Petitioner's individualized circumstances, even looking at the country reports and even noting that certain groups have been targeted and there has been general unrest. It's certainly true, but there's no evidence that either the I.J. or the B.I. did that thinking process. One of the other things I don't understand, which is akin to the question Judge Bergeron raised, is in the rest of the country, certainly in the Southern District of New York, the Court takes judicial notice of laws. Here, and in this circuit, in Hartoon, I guess that's the name of the case, and they said as well that there ought to be some, that there are evidence of thousands or hundreds or dozens of anti-discrimination laws all hurting Mr. David. And nobody bothered, the court didn't bother, the B.I.A. didn't bother to look at them, didn't say a word about how they play a role. He lives here and he's responsible for figuring out what happened in the statutes and the legislature of wherever he is and wherever the legislature sits in Indonesia. I find that hard to understand. Is that your understanding of the law, that the burden is totally on him, which is, I guess, what she was asking you? Yes, Your Honor. The burden would be on the Petitioner to marshal that evidence and submit that information in order to demonstrate in this case that he, more likely than not, would be persecuted. That's true even though in most of the rest of the world, certainly here, the court can take judicial notice of a statute from countries and states, and indeed do. All the time I had a wonderful Saki case in which Judge LaValle concluded that if I only looked at the Japanese law and accepted it, I would understand that that Saki was good stuff. In any event, it just bothers me because I just don't understand why it should be different. You're not talking about statutes here anyway. You're talking about circumstances, I mean, on-the-ground circumstances for the most part. Yes, Your Honor. But to go back to something we were talking about before, what — although my instinct is that this is an evidentiary matter, I mean, why does it make sense to, in every case, to make everybody come in with some more information about the same thing to come to the same conclusion again? I mean, you had Chinese — people of Chinese ethnicity in Indonesia are treated — many of them are treated badly and persecuted. Do we have to keep doing it over and over again? I'm not sure I understand the question, Your Honor. All right. We have now a slew of cases about Chinese Christians in Indonesia, right? They all seem to demonstrate, at least up until now, that the Chinese — for some years, some certain years, that Chinese Christians in Indonesia underwent a fair amount of persecution and discrimination. Does the next person who will come in have to prove that again to the BIA and then to this Court? Yes, Your Honor. The Petitioners would continue to need to come in and show — Why that makes sense. Well, Your Honor, first because conditions certainly are changing in Indonesia as the more recent — But if we have a case that decides that in the year of 2003 in Indonesia, Chinese Christians were in bad shape, and all — does he then have to prove that again the next time? Yes, Your Honor, certainly because each case relies upon the evidence in the record. So evidence in the record — I understand. And you're right. I'm just asking why that's a productive way to run a system. This evidence doesn't change. It's not like a different case with a different fact pattern. It's the same statute. Yes, Your Honor. However, in each case there are individual circumstances and events that would happen to each individual. But that's a different question. That's not what I was asking. I understand they have to prove the individual circumstances, but do they have to reprove the country's circumstances each time? Your Honor, we would contend that that needs to be proved and in the record for each individual case. I know you contend it, but I'd like to know why. Because it would go, in a sense, towards the showing of either in an asylum case a well-founded fear or in a withholding of removal case to show the country conditions as they would pertain to that individual's fear of persecution. Thank you. Thank you, Your Honor. You had 25 seconds on this last one, so make your point. Thank you. I'll entertain any questions, of course, if the panel has any. But I'd simply point out the substantial evidence compels the conclusion that he is eligible for withholding in this case. We want to ask the Court to extend disfavored group analysis. We believe there's past persecution in this case. But in any event, we ask the Court to remand the case. With the disfavored group analysis holding that we desire. Thank you. Thank you. We appreciate your argument on this matter. And the matter on David versus Mukasey will be submitted at this time. And we'll move to our next case on this. It raises a similar issue. Margo versus Mukasey. Thank you. Oh, she got out of the way. Do you think this case is easier or harder for you than the others? And why? Let's let him make his appearance on a separate case. They're all good cases, Judge Barry. Why don't you state your appearance first? Yes, Your Honor, I will.
judges: Paez, Berzon, Baer